## Gilbert *versus* Curtis.

In an action involving the boundaries of the land, the grantor is a competent witness for the grantee, after he is released from his covenants of warranty, notwithstanding he has reserved in his deed the right to retake possession, and have the use of the same during his life, should he need it for his support.

In determining the place where a monument, described in a deed, stood, the acts of the proprietors of the adjoining lots, in ascertaining and establishing the old boundary, many years before a question concerning its location arose, are admissible in evidence.

, On Exceptions from *Nisi Prius*, Howard, J., presiding. Trespass *quare clausum*.

The plaintiff introduced a deed of the premises, from James D. Gilbert to himself, containing the usual covenants of warranty, and in which the grantor reserved the right to take possession and have the use of the land during his life, in case he should fall into a condition of need.

Objection was made to the witness, 1, on the ground of interest as warrantor, and 2, as incompetent on account of the reservation in the deed.

When the witness produced a release from his covenants of warranty, he was allowed to testify.

The defendant introduced a deed from Elijah Gilbert to Caleb Gilbert, dated Dec. 17, 1816, describing a line running from a birch tree, northerly parellel with the end line of the lots, to the side line of lot No. 161; *thence westerly, on said line, about forty rods to a stake and stones.*

, The principal question was as to the length of this last line. The plaintiff contended that it should be extended about fifty-two rods; and offered testimony tending to show that in the fall of 1826, after the death of Elijah Gilbert, his three sons, his grantees, viz.: Josiah, Caleb and James D. Gilbert, being the proprietors of the adjoining lands, erected a monument at that point, intending to conform to the description in the deed from Elijah to Caleb Gilbert, and run a line northerly from it, parellel with the end lines of the lots.

The defendant objected to this testimony as inadmissible, but the Judge received it, submitting it to the jury, to determine from the evidence in the case, whether the monument was placed upon the spot referred to in the deed to Caleb Gilbert, as where the stake and stones were situated.

The defendant claimed under Caleb, and the plaintiff under Josiah and James D. Gilbert.

The counsel for defendant requested the instruction, *that* monuments, mentioned in the deed, and not then existing, and which were not erected until ten years after, in order to

conform to the deed, will not be regarded as the monuments referred to, and will not control the distances given in the deed.

The Judge declined so to instruct the jury, but did instruct them, that the testimony in reference to the erection of boundaries, ten years after the deed was made, by proprietors of the adjoining lands, being the parties to the deeds from Elijah Gilbert, was proper for their consideration, in determining the true boundaries of the land mentioned in the deed, but that it was not conclusive and might not control the rights of the parties.

A verdict was returned for the plaintiff.

The defendant excepted.

*Ludden*, for defendant. — 1. The grantor under the reservation in his deed, ought not to have been admitted to testify. *Lunt* v. *Brown*, 13 Maine, 236; *Freeman* v. *Blanchard*, 21 Maine, 446.

By the terms of the deed he reserved a life estate. — What else can be made of it? In reserving the *right* to enjoy, he reserved the enjoyment itself, with the condition between himself and his grantee as to his need of it, which is at most a question between themselves.

2. The requested instruction should have been given; it had reference to the *time when*, and the parties *by whom* monuments may be erected in order to conform to monuments mentioned in the deed, which are in law to govern the extent and control the length of the line named in the deed. If monuments are mentioned in the deed and afterwards erected in order to conform to it, that must be done immediately and by the parties to the deed. *Ken. Purchase* v. *Tiffany*, 1 Greenl. 219; *Frost* v. *Spaulding*, 19 Pick. 445; 1 Greenl. Ev. 301, note.

3. The instruction given was wrong. The construction given by parties themselves to boundaries is always proper testimony in reference to the true boundary; but never in order to conform to a monument mentioned in the deed, unless made by the parties to the deed. *Makepeace* v. *Bancroft*, 12 Mass. 469; *Blaney* v. *Rice*, 20 Pick. 62.

None but parties to the deed could *ever* erect a monument in order to conform to a call in the deed. Proprietors of adjoining lands may perform acts which may be proper evidence in determining the true boundary if they have not a common grantor, but they may not in any case except *with* the grantor, determine a call in the deed.

And then the proprietors of adjoining lands cannot determine the true boundaries against those deeds. If the monuments do not exist, the *distance* must control until it is shown that monuments intended to conform to those in the deed were *forthwith* erected by parties to the deed.

*W. Gilbert,* for plaintiff.

CUTTING, J. — It is contended, that James D. Gilbert, after being released from his covenants of warranty, was still an interested witness, because, in his deed to the plaintiff, he reserved to himself " the right to resume possession of the premises conveyed, and hold the same in case he should fall into a condition of need, and hold the same to his use, so long as he may be in need of the profits thereof during his life." But the witness stands indifferent as to the legal effect of the judgment, whether favorable or otherwise to the plaintiff, for it will settle nothing except the rights of the parties in this suit; and besides, whether the witness will ever be under the necessity of resorting to his reservation, is a fact too uncertain, remote and contingent to render him incompetent.

The principal question at the trial was, as to how far westerly on the north line of lot numbered twenty a certain line extended, described in Elijah Gilbert's deed to Caleb Gilbert, of December 17, 1816, as " about forty rods to a stake and stones."

The plaintiff offered testimony tending to show that the proprietors of the adjoining lands, in the fall of 1826, erected a monument at a point some twelve rods further west-erly, intending to conform to the description in the deed. This, together with some testimony as to the defendants' claim, constituted all the evidence touching the termination

of that line, or the actual original location of the stake and stones. The plaintiff's testimony was clearly admissible, as showing the acts of the adjoining owners; and the instructions, that such was proper for the jury to consider in determining the true boundaries of the land mentioned in the deed with the qualification, that it was not conclusive, were unexceptionable. The length of the line was uncertain; the monuments referred to in the deed, (supposing them originally to have existed,) had been destroyed. How were the parties then to ascertain the true boundary, unless it were by evidence of the subsequent acts of the adjoining proprietors in amicably ascertaining and establishing the old boundary, more than twenty years before the commencement of the present action? The proof was not admitted to establish a new corner, but to show where the old one originally existed; to "determine the true boundaries of the land mentioned in the deed," and the ruling was more favorable for the defendant than the opinion of the Court in *Stone* v. *Clark*, 1 Met. 378, that "when both parties agree as to the boundaries and lines of a lot, they must be taken to be the true boundaries and lines, unless the contrary can be clearly shown."

The requested instruction was based on the hypothesis, that no monument was erected at the date of the deed, as to which there was no evidence, and the instructions given were all that the case required and the exceptions must be overruled, and judgment on the verdict.

SHEPLEY, C. J., and RICE and HATHAWAY, J. J., concurred.